SCOTT BROTHERS, Respondents, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, March 26, 1894.

1. **Common Carrier:** REPLEVIN: CHARGE FOR KEEP OF STOCK. Plaintiff shipped certain mules from West Virginia to Cedar City, Missouri. The bill of lading stated the regular rate to St. Louis. The defendant claimed in addition the regular rate from East St. Louis to Cedar City. On arrival defendant, with plaintiff's consent, stabled the mules. On the next day plaintiff tendered the charges specified in the bill of lading and the property was refused him on the presumed ground of the nonpayment of all charges. No tender was made for the keeping and stabling. After thirteen days plaintiff brought this suit and deposited in court the amount of freight specified in bill of lading, but did not include the feed bill due for the day's keeping at the time the tender was made. At the trial plaintiffs obtained an instruction on the hypothesis that they demanded the mules and tendered the freight on the day of arrival. *Held,* the instruction was *error;* and the error is not *cured by* plaintiff's contention that the refusal to deliver the mules was based solely on account of freight from East St. Louis to Cedar City not having been included in the tender, as no sufficient facts are made to appear from the record to support such contention, and the answer put plaintiffs on proof of their ownership and specially set up a lien for the feed and care of the mules.

2. ———: MISTAKE IN CONTRACT: PLEADING: EVIDENCE. Defendant set up as a defense that it was a connecting carrier, and as such advanced the amount specified in the bill of lading, and, under a new contract, carried the freight to its destination and did not plead a mistake concerning the insertion of the contract charge for freight into the bill of lading. *Held,* that evidence of mistake was not properly admitted.

*Appeal from the Callaway Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*Bailey & Tincher* for appellant.

(1) The court erred in giving plaintiffs' instruction number 1. The evidence nowhere shows that plaintiffs tendered to defendant sixty-three cents per hundred on twenty thousand pounds on the arrival of the mules at Cedar City; on the contrary, the evidence shows that the tender was made on the next day after a feed bill of $10.20 had accrued. (2) The court erred in giving plaintiff's instruction number 2, inasmuch as the sum stated as necessary to be tendered did not include any amount whatever for feeding and sheltering the mules up to the time of the tender. (3) The court erred in giving instruction number 7 asked by plaintiff. The same is unauthorized by the facts in the case, and was calculated to mislead, and did mislead, the jury. The court should have instructed that the jury could not vary the written contract in question, unless the *weight* of the evidence showed $126 was meant to be the charges to East St. Louis only. Again the court erred in telling the jury that in determining whether or not there was any mistake in the written contract, they would take into consideration whether or not the B. & O. Co. about the same time issued a through bill of lading on another car load of plaintiffs' property, and whether or not the freight was settled for without objection—as there was no evidence of any such other shipment, except for a different class of property altogether, with different rates and in which the C. & A.'s part was specifically stated in the way bill. (4) The court erred

in refusing instructions 1, 2 and 3, as asked by defendant, and in giving third as altered. U. S. Interstate Commerce Act, as amended March 2, 1889, sec. 2.

*Silver & Brown* for respondents.

The trial court did not err in refusing to sustain defendant's demurrer to the evidence, or in giving instructions numbers 1, 2 and 5, because of the alleged failure of plaintiffs to tender the $10.20 item for expenses of feeding and sheltering the mules the night of their arrival at Cedar City. Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he is estopped, after litigation is begun, from changing his ground and putting his conduct on another and different consideration. *Railroad v. McCarthy*, 96 U. S. 258; Wells on Replevin, sec. 381. Besides, instruction number 3, as given by the court and in the form asked by defendant, contains the same alleged error, for it concedes to plaintiffs the right to recover, if they tendered the $126 plus the $33 rate from East St. Louis to Cedar City. Where a party has asked similar instructions to those given, he is in no condition to complain. *Whitmore v. Sup. Lodge, etc.*, 100 Mo. 36, and cases cited; *Harrington v. Sedalia*, 98 Mo. 583; *Estes v. Fry*, 94 Mo. 267. Nor would the rule of law as to the question of evidence necessary to establish the alleged mistake be changed by the mere fact that the jury also tried that issue. The issue remained an equitable one, though tried by a jury.

ELLISON, J.—Plaintiffs seek to recover the possession of seventeen head of mules detained by defendant. They obtained judgment in the court below.

Plaintiffs shipped the mules from Cherry Run, West Virginia, to Cedar City, Missouri, on a through bill of lading. The mules were billed as weighing twenty thousand pounds, and as shipped to destination in one car at sixty-three cents per hundred pounds, amounting to $126. It seems that this sum is the regular rate to East St. Louis, Illinois, and that $33 per car is charged by defendant, whose road connects at East St. Louis, from that point to Cedar City. On the day the mules arrived at Cedar City defendant's local agent notified one of plaintiffs, who called but did not take the mules; stating that he would do so next day and would pay the freight. By mutual consent the mules were unloaded and placed with a stable man for feed and keeping with the understanding that defendant was not surrendering possession. On the next day the misunderstanding as to freight charges developed. Plaintiff tendered the charges as specified in the bill of lading, viz., $126, and the property was refused him. It does not, directly, appear from the testimony, as preserved, on what ground the refusal was put, except as we may infer it to be the payment of all charges at the time of refusal. On the day of arrival no dispute or trouble is stated. The agent says he told plaintiff the amount of freight and that plaintiff said he would come next day and pay it. In the meantime the mules were put in a stable. On the next day plaintiff called and tendered the freight charge as specified in the bill of lading, but made no tender for the keeping and feed of the mules, amounting to $10.50. Plaintiffs did not institute this action for thirteen days thereafter; defendant keeping the mules during this time. Plaintiffs deposited into court the amount of freight specified in the bill of lading, but did not include the feed bill due for the day's keeping at the time he made the tender.

Scott Bros. v. The C. & A. R'y Co.

In this connection the plaintiffs obtained an instruction on the hypothesis that they demanded the mules and tendered the freight on the day of arrival. This was error. The evidence was that they did not tender the freight until the day after the arrival. This instruction was likewise erroneous in authorizing a recovery without a tender of the feed bill which had accrued. Plaintiffs seek to avoid this serious defect in their case by the contention that the refusal to deliver the mules was based solely on account of the freight from East St. Louis to Cedar City not having been included in the tender and that defendant should· not be permitted to now allege a different cause. Without assenting or dissenting to the idea that this would have excused a proper tender by plaintiffs, it is enough to say that no sufficient facts are made to appear from the record to support such contention. The answer was sufficient to put plaintiffs on their proof as to their ownership and it specially set up the fact of the additional lien for the feed and care of the mules.

The defenses set up by defendant as to the merits were that the tariff rate of freight from Cherry Run to East St. Louis was $126, which defendant, as a connecting carrier advanced; and that, by a new and independent contract of shipment from East St. Louis to Cedar City, plaintiffs agreed to pay $33 (there is some confusion of statement whether the sum was $33 or $35) for the shipment between these points. There was no defense set up as to a mistake concerning an insertion of the contract charge for freight in the bill of lading at Cherry Run. We think, therefore, that evidence as· to such mistake was not properly admitted.

The judgment will be reversed and the cause remanded. All concur.